HELEN ROGERS BRADFORD *v.* LUCINDA HALL CULBRETH, ESTHER W. BRADFORD, widow of Robert R. P. Bradford, deceased, MARY FIELD BRADFORD, widow of Willard H. Bradford, deceased, DAISY BRADFORD, widow of William Bradford, deceased, LUCINDA HALL SHAKESPEARE and WILLIAM BRADFORD, JR.

374

(*November* 22, 1939.)

RODNEY, J., sitting.

*James R. Morford* and *William Marvel* for plaintiff.

*Henry Ridgely* and *George M. Fisher* for Lucinda Hall Culbreth, Esther W. Bradford and Mary Field Bradford.

*Ernest V. Keith* for Daisy Bradford, Lucinda Hall Shakespeare and William Bradford, Jr.

Superior Court for Kent County, No. 7, October Term, 1938.

RODNEY, J., charging the jury:

This is an action at law for dower brought by the plaintiff, Helen Rogers Bradford, against the named defendants. By the action the plaintiff not only seeks to have assigned and set off to her, for her life, the one-third part of the lands and premises mentioned in the writ and declaration, or the one-third part of the net rental value thereof, but by the action the plaintiff seeks also to recover reasonable damages for the detention of her dower in the past from the time she contends she became dowable, and this date from which the plaintiff claims she was dowable was June 30, 1900.

The unusual nature of the action and the paucity of

instances in which it has been employed in Delaware makes it expedient that I give to it some passing attention. I shall not pause to consider whether the right to dower had its origin in the common law and our Statutes only related to the remedy as *held* by the Court of Errors and Appeals in 1847, in *Layton v. Butler, 4 Harr.* 507, or whether the right of dower, while existent at common law, was so circumscribed by the law of Delaware as to liens against the husband in his lifetime as to have had its real origin in the law of 1816 (*Vol.* 5, *Laws* of *Delaware, p.* 174) as *held* by the Superior Court in 1838 in *Coulter v. Holland, 2 Harr.* 330, at *page* 334, and tentatively approved by the Court of Errors and Appeals in 1877, in *Bush v. Bush, 5 Houst.* 245, at *page* 266.

In either event it was the law of this State in 1900 as now set out in *Sec.* 3767, *Revised Code* of 1935, that the widow of a man "who during their marriage was seized of an estate of inheritance in any lands, or tenements, within this State, shall have the third part of all the lands and tenements whereof her said husband was seised, as aforesaid, * * * to hold to her as tenant in dower for and during * * * her natural life, free and discharged from all and every the alienations, covenants, debts, liens and incumbrances, made, entered into, contracted, or created by the said husband after the intermarriage, unless she shall have relinquished her right of dower therein by her own voluntary act, according to the existing laws of the State."

I shall also pause but briefly to consider the nature of the action. At common law where the widow had received no part of her dower she was entitled to recover it in an action of *"Dower unde nihil habet"*. At early common law she could recover no arrears of dower or damages for the detention, but this was provided in 1235 by the *Statute* of *Merton* (20 *Hen.* 3). We had in Delaware no statutory provision governing arrears of dower or damages for the de-

tention, until the *Act* of February 11, 1829 (*Vol. 7, Laws of Delaware, page* 361), which was passed for inclusion in the *Code* of 1829 and which, without change of phraseology, has been split up and is now found as *Sections* 3776-3781 of *Revised Code* of 1935. In *Layton v. Butler, supra,* it was stated that the common law proceedings were simplified by the *Act* of *Assembly,* and that an action for dower was the common law action and the action for damages for detention was created by the Statute. In *Betts v. Matthews,* 4 *Harr.* 427, substantially the same judges said the damages "are a mere accident given by the *Act* of *Assembly*". Until the question of damages becomes material it is not necessary for me to consider whether the present case is brought pursuant to the common law as simplified by the *Act* of *Assembly,* or whether it is brought purely by virtue of the Act itself. The statute sets out the proceedings in an action of dower and provides (*Sec.* 3779) :

"The demandant shall recover reasonable damages for the detention of her dower, which damages shall be in satisfaction of any demand on account of rents and profits * * *."

It is also provided (*Sec.* 3780) :

"Upon judgment, the court, instead of awarding a writ for delivering seizin, may appoint five judicious and impartial freeholders of the County to lay off the dower, and also to assess the damages for the detention, if not previously assessed by a jury * * *."

The plaintiff, by her declaration, demands that the defendants render to her dower out of the freehold of Thomas B. Bradford (her husband) in certain described lands and premises at the corner of Water and State (formerly Main) Streets, in Dover, Delaware. She also claims damages for the detention of her dower, and these damages she fixed at $50,000.00.

To this declaration the defendants filed a number of pleas, but the difficulties of the case cluster around the plea that Thomas B. Bradford was not seized of such an estate in the land that would entitle the plaintiff to dower.

From the evidence the following material facts appear, which will be given in some chronological order:

The plaintiff has proven that the land in which she claims dower once belonged to Vincent Lockerman, the great grandfather of Mrs. Culbreth, one of the defendants, and of Thomas B. Bradford, the former husband of the plaintiff. From Lockerman the title may be traced downward by descent, devises and conveyances to Lucinda Hall Bradford, the mother of Lucinda Hall Bradford Culbreth, and also the mother of the husband of the plaintiff. Mrs. Bradford had also three other children, William Bradford, Robert R. P. Bradford and Willard H. Bradford.

Mrs. Bradford, the mother, by will dated February 26, 1879, and probated September 25, 1888, after making certain bequests of personal property and pecuniary legacies to all of her children by an item (which for convenience I call Item 10), provided:

"I give, devise, and bequeath to my said daughter (Lucinda Hall Bradford) the house in Dover, now occupied by myself, as long as she shall remain single, or desires to remain in it. If she marry, or for any reason makes another place her home, then I give, devise and bequeath the said house and land belonging thereto to my eldest son Thomas B. Bradford."

Thomas B. Bradford married the plaintiff December 18, 1888.

On May 29, 1893, Dr. Thomas B. Bradford, together with his wife, Helen Rogers Bradford, the present plaintiff, executed and delivered to his sister, Lucinda Hall Bradford, an absolute deed conveying in fee simple all the right, title, interest, property, claim and demand of the said parties of the first part, which they now have or may hereafter acquire in any manner whatsoever in the premises as to which the present claim of dower is made.

On the same date an agreement was entered into between Lucinda Hall Bradford and Thomas B. Bradford, whereby Thomas B. Bradford agreed to transfer, assign

and deliver to Lucinda, within one year from the date, bonds of the Wilmington City Railway Co. having a par value of $1,500.00, bonds of Lehigh Coal and Navigation Company having a par value of $1,000.00 and bearing interest at 6%, and ten shares of the Pensylvania Railroad Company. By the agreement Lucinda Hall Bradford covenanted and promised upon the performance of the agreement by Thomas, on or before May 29, 1894, to convey and assure to Thomas "all the right, title, interest and estate which has been this day conveyed to her by said Thomas B. Bradford" in the premises here in controversy. Parenthetically, I may say this conveyance, as such, has never been made.

One month after the making of the Deed, viz. on June 30, 1893, Dr. Thomas B. Bradford disappeared and has never been seen or heard of since that time. On the morning in question, the testimony shows, Dr. Bradford requested his wife to perform some trivial service for him and left for the ostensible purpose of visiting his patients. Since that time no trace or tidings have been had of him. Detective agencies were employed and communications made to every State in the American Union and in Mexico, and to every Province of Canada, and to several foreign countries, but no news was ever obtained. Thus is the testimony.

On June 6, 1894, there was made upon the record of the deed from Thomas B. Bradford and wife to Lucinda Hall Bradford the following notation:

"1894: June 6, the foregoing Deed although absolute on its face, was made subject to an agreement entered into between the said Lucinda H. Bradford and Thomas B. Bradford the grantee and grantor in the above Deed bearing even date with this Deed and recorded in this office in *Deed Record Book P. Vol. 7, Page* 361, to which reference is hereby expressly made whereby this foregoing Deed in legal contemplation is a Mortgage and I the said Lucinda H. Bradford having received the Bonds and Stock mentioned in the said Agreement together with the dividends and interest which have accrued and been paid on the same since the date of the said Agree-

ment until this day. Now I the said Lucinda H. Bradford do hereby mark the above Mortgage fully satisfied and paid.

"Lucinda Hall Bradford

"Witness:
"James Virdin."

This notation was signed by Lucinda Hall Bradford and attested by James Virdin who was, at the time, Recorder of Deeds of Kent County, Delaware.

On June 15, 1899, Lucinda Hall Bradford was married to Alexander Huston Culbreth.

On May 22, 1900, Thomas B. Bradford, Jr., only child of Dr. Thomas B. Bradford and the plaintiff, Helen Rogers Bradford, died, aged 10 years.

June 30, 1900, was a date which represented seven years from the disappearance of Dr. Thomas B. Bradford, and is the time from which the plaintiff contends her claim of dower is to be measured.

Upon these facts and the pertinent and relevant principles of law rest the contentions of the parties.

The plaintiff contends that under the will of Lucinda Hall Bradford the daughter Lucinda Hall Bradford (now Lucinda Hall Bradford Culbreth) took a defeasible life estate—subject to be defeated either by her marriage or her removal from the property; that the life estate was defeated on June 15, 1899, upon her marriage, and the estate became vested in Thomas B. Bradford. While Thomas B. Bradford disappeared June 30, 1893, the plaintiff contends he is presumed in law to have been living on June 15, 1899, and that the burden is on that person who asserts the contrary; the plaintiff then contends that Thomas B. Bradford is presumed to be dead at the expiration of seven years from his unexplained absence, viz. on June 30, 1900, and that from that date she, the plaintiff, has been entitled to dower. Insofar as the deed of May 29, 1893 from Thomas

B. Bradford to his sister is concerned the plaintiff contends that in legal contemplation the transaction was either a mortgage or a dry trust, and that in either case the interest of Thomas B. Bradford on June 30, 1900, would entitle the plaintiff to dower.

The defendant agrees that Lucinda Hall Bradford took a defeasible life estate under the will of her mother, but contends that it was only to be defeated by her removing from the property, and that as she is still living and in the property, that the life estate has not terminated, so that no estate has ever vested in Thomas B. Bradford, and therefore the present plaintiff can not be entitled to dower. The defendant also contends that on May 29, 1893, Thomas B. Bradford and his wife, the present plaintiff, made an absolute deed conveying all the interest or estate which Thomas B. Bradford then had or should thereafter acquire. The defendant contends that a Court of law is powerless to controvert the legal effect of the deed and this, if done at all, can only be accomplished in a Court of Equity.

Since all of the difficulties connected with the present question have their origin in the will of Lucinda Hall Bradford, it is logical that our attention should be first directed to that will. Mrs. Bradford, as we have seen, by Item (arbitrarily called Item 10), provided:

"I give, devise, and bequeath to my said daughter (Lucinda Hall Bradford) the house in Dover, now occupied by myself, as long as she shall remain single, or desires to remain in it . If she marry, or for any reason makes another place her home, then I give, devise and bequeath the said house and land belonging thereto to my eldest son Thomas B. Bradford."

It is obvious that since this is an action of Dower and any right of the present plaintiff grows out of the title of Thomas B. Bradford to the premises in controversy, our attention should really be focused on the interest of Thomas B. Bradford, for we are only concerned with the interest of the daughter, Lucinda Hall Bradford, insofar as it touches

or becomes material in considering the rights of Thomas B. Bradford.

The item of the will consists of two sentences. The first sentence has to do with the interest or estate of the daughter, Lucinda, and the second sentence has to do with the interest or estate of the son, Thomas B. Bradford. Because, however, they are, to a large extent interrelated, some consideration must be given to both.

It would seem that there are four situations under the will in which the interests of the daughter and the son could be concerned:

A. Where the daughter, Lucinda, remained single and desired to remain in the property.

B. Where the daughter, Lucinda, married and moved out of the property.

C. Where the daughter, Lucinda, remained single but did not desire to remain in the property, but moved away.

D. Where the daughter, Lucinda, married, but did desire to remain in the property, and did so remain.

The present case does not fall within the situations called "A", "B" or "C", and they will not be examined at length, although some passing attention to them may become advisable. Situation "D" calls for a construction of the will.

Of course the primary purpose of all construction of a will is to ascertain from the entire will the intent of the testatrix, and if that intent can be ascertained it will be given effect unless it contravenes some fixed and established principle of law. Because the interest of the son, Thomas B. Bradford, is dependent upon the termination of some interest in the daughter, Lucinda, we then must first see if we can ascertain the intent of the testatrix as to the

daughter. Since the daughter, Lucinda, has always remained in the home and now continues therein, the narrower question is as to the intention of the testatrix in relation to the marriage of the daughter.

It would seem that the intent of the testatrix, with reference to the marriage of her daughter, might be considered in one of at least three particulars:

1. Was the intent of the testatrix with reference to the house an effort on the part of the mother to provide for the support and maintenance of the daughter, while unmarried.

2. Was there any intent on the part of the testatrix that the provision as to the marriage of the daughter should operate to prevent or be in restraint of marriage.

3. Does the intent of the testatrix appear that, for sentimental or other reasons sufficient for her, she desired her daughter to remain in the house as long as she could or would do so.

I shall consider these questions in their order.

1. I am unable to find in the will any evidence that the purpose of the disposition of the house to the daughter was solely or mainly an intent to provide for her while unmarried. In the first place the testatrix does not say so. This may be inconclusive, but no suggestion of such intention appears in the will. I am ignorant of the amount of the estate, but it was evidently substantial at the time of making the will in 1879. To three sons (William, Robert and Willard) were given legacies of $9,000.00 each; to Thomas B. Bradford and Lucinda Hall Bradford the legacies were $10,000.00. Otherwise there was no substantial difference between the treatment accorded to any child, and the shares of the residuary estate were precisely equal. The plaintiff contends that the devise to the daughter is made for the

purpose of contributing to or providing for her support. The plaintiff, however, argues that the devise is coupled with a double condition, viz.: As to marriage and as to remaining in the property, and that the estate of the daughter is terminated either upon marriage or removal from the property. The argument of a desire to contribute to the support of the daughter can have no more effect as to one condition than the other. It is inconceivable that a desire to contribute to the support can furnish any basis for a devise as long "as she desires to remain in it". If for financial reasons the daughter was required to move from the home a desire to contribute to her support would not be shown by the entire forfeiture of her interest and the consequent lessening of her support. Then, too, upon the termination of the interest of Lucinda in the house in question the house did not pass to the remaining children equally but, for some estate, to Thomas B. Bradford alone. I can no more treat the house as an element of support to Lucinda than I can do so if her estate be terminated with regard to Thomas. I do not think that a desire to contribute to the support of the daughter was the basis of the gift.

2. Is it to be gathered from the will that the provisions as to the marriage of the daughter were intended to prevent or be in restraint of that marriage? Of course it is the law that where an estate is created without limit of duration and that, as a condition subsequent, the estate is to be defeated by marriage, as a general term, that such condition is held to be void as in general restraint of marriage and against public policy.

There is, however, a very subtle but well recognized distinction between a limitation of an estate to exist only until marriage and the forfeiture of an estate where marriage constitutes a condition subsequent. In the first case of limitation the duration of the estate is marked by

the continuance of the unmarried status and when marriage occurs there then remains no estate at all to resist a forfeiture by entry. Such provision is not generally *held* in restraint of marriage and is generally evidenced by provisions for a person "during her widowhood" or "so long as she remains unmarried". Where, however, an estate is given and its duration is limited by a provision that marriage shall operate as a condition subsequent in defeasance of the gift, such provision, if general in its terms, is usually *held* void as in general restraint of marriage. This distinction is universally recognized and is stated by Chancellor Wolcott in *Wilmington Trust Co. v. Houlehan,* 15 *Del. Ch.* 84, at *page* 95, 131 *A.* 529. It is unnecessary to cite individual authorities as all of the cases are listed in exhaustive annotations in 122 *A. L. R.* 1-132, and 4 *British Rul. Cas.* 64-221. Most of the cases construing phrases such as "during widowhood" or "so long as she remains unmarried" as limitations and not as conditions have been where those phrases appeared alone and where facts seemed to exist to justify some desire to assist in the maintenance during the period, although these facts seem not always to have been commented on in the cases.

In the present case the language with reference to marriage alone would not seem to constitute such a condition subsequent so as to operate as in general restraint of marriage and thus be void, but if the language as to marriage had stood alone it would seem rather to constitute a 'imitation. The language of the will as to marriage, however, does not stand alone, and to the phrase "as long as she shall remain single" is added a very important phrase "or desires to remain in it".

▇ Not having found that the provisions as to marriage are void as in general restraint of marriage and not having, to this point, found any intent that marriage had any relevancy to an expressed desire to aid in support, let

us view the language as to its effect upon an intent of the testatrix that the daughter should remain in occupancy of the house, and to this question I must address myself.

3. I must now consider whether there is any apparent intent on the part of the testatrix, for sentimental or other reasons, that she desired her daughter to remain in the house as long as she would do so. To discover this intent we must examine the various provisions of the will.

By item (which I call 22) the testatrix provides:

"Item. All the silver now in the house, or at the time of my death, shall remain undivided as long as the children live together, but as each makes a home for themselves, one fifth of the silver, or its equivalent in money must be given to the ones or one leaving."

From this provision it would seem that the testatrix desired that while the children remained together the silver would remain intact and the proportionate division would only take place upon the removal of a child and the establishment of a new home, and so the balance would remain until each succeeding child should marry and leave the home.

By item (which I call 21) the testatrix provides:

"Item. The furniture having been put into the house when it was built, is to remain in it, as long as any of the family live in it. In case of the house being sold to strangers, the furniture and china of all description to be divided as nearly equally as possible."

A somewhat similar provision in Item 23 concerns the mirrors.

From these provisions, it is evident that the furniture and mirrors are not to be disturbed as long as any member of the family could live in the house, but only when the house must pass into the hands of strangers. From her statement that the furniture had been put into the house when it was built (which was about 1742) and had there remained for 200 years, it is quite evident that she·desired house and furniture to be ͭin the possession of a member of

her family. From this the corollary seems inevitable, viz.: That she desired the house and furniture to remain in the possession and occupancy of some member of her family as long as possible, and she selected her daughter as the one to carry out this desire.

We must now return to *Section* 10. This is the only other mention of the house contained in the will. There it is given to the daughter "as long as she shall remain single or desires to remain in it". I have already (by *Items* 21 and 22) found some evidence of intent of the testatrix that the house should be occupied by some members of the family. *Item* 10 gives the house to the daughter as long as she "desires to remain in it". This of course agrees with the intent that a member of the family live in the home.

If we should read the phrase "as long as she remains single" as indicating that marriage of and in itself should terminate the estate of the daughter, the words "or desires to remain in it" are perfectly meaningless and can be given no consideration whatever. It is a leading rule in the construction of a will that no part of it, to which meaning or operation can be given consistent with the general intent of the testator, shall be rejected.

If, on the other hand, we may consider marriage of the daughter as one anticipated or probable cause for removal from the house, then all the words of the will may be given a meaning. In a vast majority of cases, upon marriage the wife leaves her home and makes a new home with her husband. With this thought in mind every provision of the devise over to Thomas B. Bradford can be made clear. With this construction the words of the will "If she marry (and thus leave the home) or for any reason makes another place her home" provides a firm basis for the devise over to the oldest son. Thus, and only thus, is made discernible and consistent the wish that a member of the

family, and primarily the daughter, remain in the home, and so I read the intent of the testatrix to be that the daughter, Lucinda Hall Bradford, shall have the home as long as she desires to remain in it, but "if she marry (and thus leaves the home) or for any reason makes another place her home" then the house and land is devised over to Thomas B. Bradford.

And now a word as to the title to the house and land. The property was given to Lucinda Hall Bradford "as long as she remains single or desires to remain in it". I am of the opinion that Lucinda took a life estate in the property subject to be terminated by some act of hers. If the words of the devise had been solely "as long as she remains unmarried" without the addition of the words as to occupancy then, under the weight of authority, her estate would have been an estate for life terminable upon her marriage. 2 *Alexander on Wills, p.* 1401. See annotation in *Ann. Cas.* 1915B 1238.

On the other hand, if the words of the devise had been "as long as she desires to remain in it" without the addition of the words as to remaining single, then in my opinion the estate would have equally been for life estate determinable upon the daughter's removal from the premises. 2 *Alexander* on *Wills, p.* 1400.

I am of the opinion that the reasonable intent of the testatrix as to the premises in question to be gathered from the entire will is that the daughter, Lucinda Hall Bradford, took a life estate in the premises determinable upon her removal from the premises, and as she still remains in the premises the estate is not now terminated.

A life estate is a freehold estate, though not one of inheritance. I shall not pause to discuss the question that there can be no right of dower in a widow of a man as to a parcel of real estate where as to that real estate

there exists in another person an unterminated freehold estate having priority to the estate of the husband. In other words for a widow to be entitled to dower under the *Act* of *Assembly* the husband must have been seized of the real estate as to which the claim of dower is made. Seizin as contemplated by the *Act* means either the actual possession of freehold property with a title to it of an inheritable nature then vested, or a right by virtue of such title to have such possession immediately. I shall not lengthen this discussion with citations of authorities as to this point, for this seems to be the universal law and expressly adopted by the Court of Errors and Appeals of this State in *Bush v. Bush*, 5 *Houst.* (10 *Del.*) 245, at *page* 263.

With an unterminated freehold estate still existing in the defendant, Lucinda Hall Bradford Culbreth, there could be no dower in the present plaintiff, as the widow of Thomas B. Bradford, even though his death be presumed.

Because I have concluded that no claim of dower could here exist because of an existing and unterminated particular estate of freehold nature having priority to any estate to be enjoyed by Thomas B. Bradford, so it would seem unnecessary to determine the very difficult question as to the exact nature of Thomas B. Bradford's interest or estate.

In one of the suggested situations possible under the will, viz.: That Lucinda Hall Bradford had remained single and also remained in the premises, it is quite probable that Thomas B. Bradford would have taken no estate at all, but that the property would have passed under the residuary clause of the will. Whether under the other possible situations his estate was by way of contingent remainder, executory devise, or in some other manner, it is unnecessary to consider, for such question may never arise. I think it does not arise in the present case, which only relates to the present plaintiff's claim for dower.

Equally material under the pleadings is the effect upon the present case of the disappearance of Thomas B. Bradford on June 30, 1893, and his continuous absence since that time. This disappearance and subsequent absence affects the present case in two separate and distinct ways.

(1) As to the effect of the disappearance on the presumption of survivancy of Thomas B. Bradford on June 15, 1899, the date of the marriage of Lucinda Hall Bradford and the consequent vesting or accrual of the right or estate of Thomas B. Bradford, even if we could assume that the marriage of Lucinda terminated her interest or estate in the premises.

(2) As to the effect of the disappearance and subsequent absence of Thomas B. Bradford upon the presumption of his death and the consequent right or claim of dower for the present plaintiff.

The two matters being severable in their natures and involving two distinct and separable inferences or presumptions which may be, to some extent antagonistic in effect, must be separately considered.

1. Now we have already seen that Dower does not attach until the husband is "seized" of the land, i. e. has either possession or present right of possession under his title. So even if we assume that the interest or estate of Lucinda Hall Bradford terminated on her marriage on June 15, 1899, we must find that at that time Thomas B. Bradford was in a position to have a right of possession, for it must be conceded he had no actual possession or seizin. It is a principle of law that where a person is shown to be alive at a given date his continuance of life will, for a time, be inferred. The better reasoning indicates this as an inference of fact, as distinguished from a presumption of law. When a person disappears and is unheard of there is, for a time, a just inference that he is alive, and this in-

ference is dependent, both as to its strength and duration, upon the attendant facts and circumstances. Within a period of seven years from the disappearance the jury would determine as a fact and as of a particular time, either the continuance of life or the happening of death; the jury would find that the absentee was either alive or dead at the particular time, as would be warranted by the circumstances of the case, including the evidence of age, health, domestic relations, and nature of the disappearance of him whose death is suggested.

 ■ If, therefore, as a matter of law in this case any interest, estate, or right of possession could have vested in Thomas B. Bradford upon the marriage of Lucinda Hall Bradford on June 15, 1899, the question should be submitted to the jury, as a fact, as to whether or not Thomas B. Bradford was living on said date, being fifteen days less than six years after his disappearance. See 3 *Va. Law Review*, 451; *Ann. Cas.* 1917*A*, 72; 26 *L. R. A.* (*N. S.*) 297; 75 *A. L. R.* 632; *In re Phenes Trust L. R.*, 5 *Ch.* 139; 13 *Halsbury Law of Eng.* (*Hailsham Ed.*) 629; *Davie v. Briggs*, 97 *U. S.* 628, 24 *L. Ed.* 1086; 2 *Chamberlayne on Evidence*, *Sec.* 1090-1118.

 ■ 2. Entirely distinct from the presumption of life of Thomas B. Bradford on June 15, 1899, so as to vest some estate in him upon the marriage of Lucinda Hall Bradford, if, in law, such estate then became vested, is the presumption of death of Bradford on June 30, 1900, being the expiration of seven years after his disappearance on June 30, 1893. There is a principle of law, usually called a rebuttable mixed presumption of law and fact, that an unexplained absence of seven years from a usual place of abode, with an entire lack of information concerning the absentee and accompanied by evidence that the whereabouts of the absentee are undiscoverable, raises a presumption or an inference that the absentee is dead.

In the absence of a statute this period of absence of a person is recognized as seven years. It is not material for me to consider the origin or date of the rule itself, although it has been suggested that it originated in 1805. 1 *Jones on Evidence,* 468; 3 *Harv. Law Rev.* 151-155. As early as 1806 it was tacitly recognized in this State and carried into the law of Escheats (4 *Del. Laws, p.* 55). There is an irreconcilable conflict of authority as to whether the presumption of death raises also a presumption of time of death. A minority of cases, with some plausibility, argue that a presumption of life continues for the seven year period and until displaced by the presumption of death, and therefore death must be assumed on the last day of the seven year period. In this class Delaware is sometimes listed by reason of the case of *Crawford v. Elliott,* 1 *Houst.* (6 *Del.*) 465. A majority of the cases argue that this conclusion is utterly illogical and destructive of the basis and reason of the presumption of death. Death is largely presumed from the lack of tidings or communication from the absentee, upon the theory that he could not communicate because death had prevented. If, therefore, death can be ascribed to the last day of the seven years period of absence, then at no time was the absentee negligent in communication, and hence there is no basis for a presumption of death. In the present case, in order to sustain the right to dower by reason of the death of her husband, the presumption of death at the end of the seven year period is the important thing and not the death at any particular time within that period. I have mentioned the conflict of authority merely because, as in this case, for the sole purpose of proving the claim for dower, the exact time of death was not material, so it seems to me it was not material in the cited case of *Crawford v. Elliott, supra,* and it would seem doubtful if Delaware is at all committed to the view that presumption of death implies a death upon any certain date.

Death is, however, not presumed from every mere absence of seven years, nor even from every unexplained absence. To create the so called presumption a number of things are necessary. Thus most of the authorities hold that in order to establish the presumption of death there must have been such a search and inquiry for the absentee as the reasonable nature of the case may require. The sufficiency of the search and inquiry under the existing facts must therefore be a question for the jury, under proper instructions of the Court. If, therefore, this case should be submitted to the jury this question, as one of fact, should be submitted.

Equally material to the present case are the questions arising from the fact that a month prior to his disappearance Dr. Thomas B. Bradford and his wife, the present plaintiff, made an absolute deed to Lucinda Hall Bradford, conveying all of his interest in the land as to which dower is now claimed.

This deed was dated May 29, 1893, and on the same day an agreement was entered into between Lucinda Hall Bradford and Dr. Thomas B. Bradford. By this instrument Dr. Bradford obligated himself, within one year, to transfer and deliver to Lucinda Bradford certain bonds having a par value of $2,500.00, and certain stock, and Lucinda Hall Bradford agreed that if Thomas B. Bradford performed his obligation on or before May 29, 1894, that she would convey to him all the right, title, interest and estate in the premises which he, on the same day, had previously conveyed to her. A month later Dr. Bradford disappeared.

On June 6, 1894, Lucinda Hall Bradford entered upon the blank space upon the Deed Record a statement which I have previously quoted in full. In the entry it was stated that the bonds and stock had been returned, and that the transaction was, in legal contemplation, a mortgage, which

she declared as satisfied. The validity or effect of the conveyance or of the agreement has never been judically determined, nor has any reconveyance been made.

The plaintiff contends that the absolute deed of May 29, 1893, together with the agreement of similar date, constitutes the transaction (a) as a mortgage, or (b) as a trust which has become dry or passive and (c) that Lucinda Hall Bradford, now Lucinda Hall Bradford Culbreth, is estopped or has waived any right to claim any legal title by virtue of the deed. These questions must be given some consideration.

There can be but little or no doubt of the correctness of the principle that a deed of conveyance of land absolute and unconditional on its face but intended and understood by the parties to be merely a security for the payment of a debt may, in a proper proceeding, be treated as a mortgage giving to the parties the relative rights and remedies of mortgagor and mortgagee, and nothing more. This result may be accomplished whether the defeasance clause be in the deed itself or whether the deed be accompanied by a separate written instrument of defeasance, and parol evidence has been utilized at times to show such intent of the parties.

The question before me is not the correctness of the foregoing principle, but rather of the jurisdiction of this Court to determine it. The construction that a deed absolute on its face was in reality intended as a mortgage seems to require the application of equitable principles, and many cases hold this may be done only by a Court having general equitable powers. 20 *A. & E. Enc. Law* (*2nd Ed.*) 935. In jurisdictions where the line of demarcation between law and equity is slight and the same Court dispenses both, the question may not be important. In Delaware there is an entirely separate Court of Chancery, and its jurisdiction entirely distinct from the Law Courts is complete and clearly

defined. In *Pennel's Lessee v. Weyant*, 2 *Harr*. 501, at *page* 504, it was attempted in a Court of Law to say that a deed absolute on its face was given for a special purpose and not to be effective as an absolute deed. The Court held:

"In a court of law, and between parties claiming under or against this deed, which has been acknowledged and recorded, it is not allowable to controvert its legal effect."

In New Jersey, whose separate Court of Chancery most nearly resembles our own, it has been *held* that it is not competent in an action at law to prove that a deed, absolute on its face, was intended as a mortgage. *Abbott v. Hanson*, 24 *N. J. L.* 493; *Williams v. Baker*, 62 *N. J. Eq.* 563, 51 *A*. 201.

It is true that in this case the grantee, Lucinda Hall Bradford, has signed a paper stating that the absolute deed "was in legal contemplation a mortgage". That statement, however, whatever effect it may have upon her subsequent attitude in proper proceedings, does not constitute a judicial determination nor invest this Court with jurisdiction if the jurisdiction was otherwise lacking. Regardless of her statement, the judicial determination would be necessary.

It seems clear that any remedy the grantee might seek to invoke, if it be considered as a mortgage, would be in the Court of Chancery. Foreclosure by *Scire Facias* at law would not be available, and a Court of Equity alone would be able to declare it a mortgage and decree its foreclosure.

A number of authorities also have discussed the question as to whether a deed absolute on its face, but intended as a mortgage, does not still convey the legal title. It would seem that a majority of jurisdictions sustain this rule. 3 *Pomeroy Eq. Jur.* (4th Ed.), *p*. 2851. See also note in 11 *L. R. A.* (*N. S.*) 209.

As early as 1742 the General Assembly of the Colony (now constituting the State of Delaware) recognized the nature of this outstanding legal title. By *Sec.* 8 of *Chapter 83A, Vol.* 1, *Laws of Delaware* (*p.* 222) the General Assembly provided that upon payment of a mortgage the mortgagee should enter satisfaction upon the margin of the record of the mortgage. By *Section* 10 of the same *Act* it was provided that upon payment of a debt which had been secured by a deed or conveyance which had been "defeazened as aforesaid in the nature of a mortgage" the mortgagee should reconvey the property to the mortgagor.

 There are additional reasons preventing the Court, in the present proceedings, from holding the deed, absolute on its face, as a mortgage. The great majority of cases even in those jurisdictions where a Law Court can construe an absolute deed as a mortgage, hold that where the intention of the parties that the conveyance should be a mortgage must rest on parol testimony that such testimony can only be had in a Court of Equity. See cases in 41 *C. J.* 353. There are two reasons which, in the present case would seem to require parol testimony.

1. The agreement executed May 29, 1893, required as a pre-requisite to any claim of reconveyance that certain bonds and stocks should be delivered by Thomas B. Bradford to Lucinda Hall Bradford on or before May 29, 1894. The record is entirely silent as to the date of delivery. All that appears is a statement dated June 6, 1894, that the bonds and stocks had been delivered. If time was of the essence of the transaction it would seem that parol evidence might be required so as to show that the delivery of the bonds and stock had been made within the stipulated time, viz.: on or before May 29, 1894, so as to make effective the defeasance clause, if such it be. No Court could assume the time of delivery or whether such delivery was within the stipulated time. Where an absolute deed is given and a

separate instrument provides for reconveyance upon payment of a stipulated amount, within a stipulated time, the distinction between considering the instrument as a mortgage or conditional deed is a shadowy one. The distinction becomes more acute if the payment was not made, as a fact, within the stipulated time.

2. The agreement, heretofore mentioned, provided that Thomas B. Bradford should make delivery of the bonds and stocks on or before May 29, 1894, and that reconveyance should be made to him of the right, title, interest or estate in the premises which he had conveyed. All of the undisputed testimony of the plaintiff shows that Thomas B. Bradford disappeared June 30, 1893, and has never since been heard from. There is no suggestion that Thomas B. Bradford, himself, made the delivery of the bonds and stocks in the interval between the date of the agreement, May 29, 1893, and June 30, 1893, the date of his disappearance. The record is entirely silent as to the party making the delivery of the bonds and stock. The plaintiff contends that Thomas B. Bradford was living at least until June 15, 1899, but she disclaims any knowledge of his existence or activities after June 30, 1893, so she does not contend the delivery was made by him on or before June 6, 1894.

It is, of course, unnecessary for me to discuss the proper parties in a proceeding to decree an absolute deed as a mortgage, but I have found no case in which a stranger was allowed to institute such proceedings. I am of the opinion that a person, other than the contracting party, would be compelled to show his or her right to the desired relief and, by analogy, this would be equally applicable to other proceedings in defeasance of an outstanding legal estate or interest, and of course this would require parol testimony.

█ The same reasons which would prevent my treating the deed and agreement of May 29, 1893, as a mortgage, apply equally in restraint of my considering them as a trust which has since become dry or passive.

At a late stage of the proceedings the plaintiff has called to the Court's attention the provisions of *Sec.* 3683 of the *Revised Code* of 1935, as follows:

"If a conveyance of lands, tenements, or hereditaments, be absolute on the face of it, and there be a defeasance, or *written contract,* in the nature of a defeasance, or *for a reconveyance of the premises,* or any part thereof, *the person to whom such conveyance is made, shall cause to be indorsed thereon, and recorded therewith, a note stating that there is such* defeasance, or *contract, and the general purport of it,* or the recording of such conveyance shall be of no effect; and such defeasance, or contract, must be duly acknowledged, or proved, and recorded in the Recorder's office for the County wherein such lands, tenements, or hereditaments are situate, within sixty days after the day of making the same, or it shall not avail against a fair creditor, mortgagee, or purchaser for a valuable consideration of or from the person to whom such conveyance is made; unless it shall appear that such creditor, when giving the credit, or such mortgagee, or purchaser, when advancing the consideration, had notice of such defeasance, or contract. Such contract, although not under seal, may be acknowledged, or proved in the same manner as a deed." (Emphasis supplied.)

The statute was originally passed on Feb. 5, 1829 (*Vol.* 7, *Laws of Del., p.* 299). The plaintiff seems to place reliance upon this statute and has specifically asked the Court to consider it. Under these circumstances, even at the expense of prolonging the discussion, it seems material that I state, as clearly as I can, that in my opinion the cited statute has no particular bearing upon the question before us.

█ In the first place in this case no rights or interests of strangers or third persons are involved. Here we have the original parties to the deed. The original *Act* was passed in 1829 for inclusion in the new *Code* then in course of preparation. The Hon. Willard Hall, then United States Judge for the District of Delaware, had been employed by the Delaware Legislature to prepare a new *Revised Code,* and to prepare amendments to existing *Acts,* for inclusion

therein. Judge Hall prepared the *Act* in question, and in his explanatory notes (*House Journal* 1829, *p.* 43) said "The provisions respecting mortgages and conveyances in the nature of mortgages are substantially the same as now in force". In the *Act* of Feb. 5, 1829 (*Vol.* 7, *p.* 299) we find the *Act* as hereinabove quoted. We are there referred to *Vol.* 1, *Delaware Laws, p.* 223, as the law that is being affected by the new provision. By turning to *Vol.* 1, *page* 223 (*Sec.* 9, *Chapter* 83, *Vol.* 1) the purpose of the provision of 1829 is made reasonably clear. In *Vol.* 1, *page* 223 it was recited that some persons lent money on mortgages taking absolute deeds therefor, which were recorded and giving separate defeasances which were not recorded, and upon payment of the debt to return the deed with a short release endorsed thereon, which was not recorded, thus creating disputes as to title. The *Act* then required in every case that an absolute deed was taken and a defeazance or written contract for redemption or discharge was given, that it was the duty of the mortgagor to have the defeazance recorded within 12 months or he would lose its benefit. The *Act* of 1829 has obviously the same purpose in mind, viz.: of making certain between the grantor and grantee of the absolute deed the conditions under which it was given. In the present case the defeasance contract itself is recorded and in evidence in this case.

It may be noted, too, that the statute only affects the record of the Deed. It does not purport to make void the transaction or deed itself, as between the original parties, and I think it has no material effect upon the present questions.

I recognize that this proceeding has been prolonged. I can only justify the length of my observations by the thought that the case embodies intricate and important legal questions, and by my desire to give them at least a portion of the attention which they deserve.

My conclusion, therefore, must be that I must give binding instructions for you to find a verdict for the defendants. This is based upon the fact that upon the death of Dr. Thomas B. Bradford, if he be dead, he was not seized of such an estate or interest in the premises in dispute as would entitle his widow to dower. This conclusion is reached by me upon a consideration both of the provisions of the will of Lucinda Hall Bradford and also of the deed from Thomas B. Bradford and his wife, the present plaintiff, dated May 29, 1893, to Lucinda H. Bradford, one of the defendants in whom the legal title still exists.