HELEN ALRICH,

*vs.*

PHILIP H. WOOD, JR.

*New Castle, June 11, 1947.*

*David J. Reinhardt, Jr.* (of Reinhardt & Wingate), for complainant.

*Stephen E. Hamilton,* for respondent.

SEITZ, Vice-Chancellor: The court is asked to determine whether complainant has such an interest in certain real estate as will entitle her to specific performance of a contract of sale.

The facts are undisputed. Jane Alrich died July 8, 1907, seized in fee simple of the property known as 713 West Tenth Street, Wilmington. Her will contained the following residuary clause:

"Item. All the rest of my estate, real, personal and mixed, and wherever the same may be found, of which I shall die possessed, or to which I may be entitled at the time of my decease, I give, devise and bequeath unto my three daughters, Elizabeth Alrich, Helen Alrich and May Alrich, share and share alike, as long as they each shall remain unmarried; and in case any of my said daughters shall marry it is my will that her share shall go to the other remaining unmarried daughter or daughters, and to the survivor of them, her heirs and assigns forever."

The three daughters named in the residuary clause all survived the testatrix, although they were not her only surviving children. Subsequently, both May and Elizabeth died without ever having married. May in her lifetime purported to deed her interest in the West Tenth Street property to Elizabeth and the complainant Helen, and subsequently Elizabeth purported to will her interest therein to the complainant.

Subsequent to the events just narrated, the complainant, the sole surviving daughter, also unmarried, contracted to sell the property in question to the respondent. The respondent refused to consummate the sale on the ground that the complainant was unable to convey a fee simple marketable title. Complainant thereafter filed a bill for specific performance of the contract, contending that she possessed such a title.

Complainant's interest in the premises must be ascertained from a construction of the quoted residuary clause of her mother's will. Respondent contends that the devise was void because the provisions as to remaining unmarried

constituted a restraint against marriage in violation of the public policy of this state.

If the question of a possible restraint against marriage were the only point involved, I would have no difficulty in disposing of this case since there is substantial authority in this state, although perhaps a dictum, which could be used to resolve this problem. I refer to the language of the Superior Court in *Bradford v. Culbreth,* 1 *Terry* 373, 386, 10 *A.2d* 534. In affirming this case, the Supreme Court did not discuss this point. *Bradford v. Culbreth,* 2 *Terry* 167, 18 *A.2d* 143.

Thus, even if we assume that the provision concerning marriage is a valid limitation and not an invalid condition, nevertheless, the court would still be confronted with a most serious problem of will construction, namely, whether the language of the residuary clause when considered in connection with the facts of this case gives the complainant a fee simple marketable title.

Initially, since two of the daughters died without ever having married, the court would be required to determine whether the residuary clause was at all applicable. In the second place, assuming the residuary clause to be applicable, the court would still have a serious problem of construction to determine what remainder interest, if any, reposed in each daughter, and whether such interest passed to the complainant so as to now give her a fee simple marketable title. Since it appears from the record that the three daughters were not the only surviving children of the testatrix, it is apparent that they, or their heirs, would be concerned with the construction of this will.

Should this court determine these substantial questions of will construction in a specific performance case where the actual adverse interest is not represented? I think not. In *Brown, et ux., v. Davis,* 15 *Del. Ch.* 37, 39, 131 *A.* 142, 143, in considering a bill for specific performance of a contract of sale of real estate, the Chancellor said:

"* * * It is true that equity will not compel a vendee in a contract for the sale of lands to take a title which is not marketable. If the title be in doubt whether because of a question of law or of fact, the defendant is entitled to have the bill dismissed."

Here, there is a substantial question of law involved, and those persons who should present the arguments adverse to those made by the complainant are not in court.

The New Jersey Court of Chancery in *Zane v. Weintz*, 65 *N.J.Eq.* 214, 220, 55 *A.* 641, 644, was confronted with a bill for specific performance of a real estate contract. Complainant's title and, therefore, her right to have specific performance depended upon the proper construction of a poorly drawn will. The Vice-Chancellor in refusing to grant specific performance said:

"This will is so inartistically drawn that it is difficult to put any construction upon it which will not leave the vendee, if he is decreed to perform his agreement and take title under it, in danger of losing the property conveyed at the suit of some future claimant. The decree in this suit, even if favorable to the complainant, would, of course, afford no protection to the defendant against the attack of any claimant of the lands in dispute, who is not a party to this suit.

"The doubt as to the complainant's power to convey the lands, if it is not resolved against her, must at least be admitted to be so forceful that her right is fairly debatable. This is sufficient to defeat her attempt to compel specific performance. *Vreeland v. Blauvelt*, 8 *C.E.Gr.* (23 *N.J.Eq.*) 483; *Lippincott v. Wikoff*, 9 *Dick. Ch. Rep.* (54 *N.J.Eq.*) 120, 33 *A.* 305.

"The declaration of Lord Justice James in *Alexander v. Mills*, 6 *Ch. App.* 131, to the effect that specific performance will not be decreed where the doubt of the vendor's power to convey a good title arises in ascertaining the true construction of some ill-expressed instrument, is also applicable in this case. *Richards v. Knight*, 19 *Dick, Ch. R.* (64 *N.J.Eq.*) 196, 53 *A.* 452."

While I appreciate the need for clarifying questions of title to real estate, nevertheless, in view of the circumstances under which this case arises, I feel compelled to adopt as my conclusion in this case the language of the Chancellor in *Paulmier v. Howland*, 49 *N.J.Eq.* 364, 371, 24 *A.* 268, 271:

"* * * in the exercise of the discretion allowed me in this form of action, I feel constrained to deny the prayer of the bill. In doing so, I intend that it shall be distinctly understood that I do not affirm invalidity of the title. I simply recognize that the title is burdened with difficult and unsettled questions, which rise above mere speculation, theory and possibility, and so stand in the way of a free alienation of the land, that it should not be forced upon the defendant. It is to be remembered that the judgment in this case is *in personam*, and not *in rem*, and that the decree I may make for the complainant will not settle the questions suggested as to those who are not parties to this suit."

The prayers of the bill will, therefore, he denied.

A decree accordingly will be advised.